```
                              FILED
                   CLERK, U.S. DISTRICT COURT

                         FEB 21 2025

                   CENTRAL DISTRICT OF CALIFORNIA
                   BY: ___rsm___ DEPUTY
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2025 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>      v.<br><br>SYLAS NYUYDZENE VERDZEKOV,<br>MUSTAPHA NKACHIWOUO SELLY<br>   YAMIE,<br>  aka "Mustapha Selly Yamie,"<br>  aka "Mustapha Sellyyamie,"<br>  aka "Mustapha Yamieselly,"<br>   and<br>LOVERT CHE,<br><br>      Defendants. | 2:25-CR-00123-AB<br>CR No. 25-<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1956(h): Conspiracy to Commit Money Laundering; 18 U.S.C. § 982: Criminal Forfeiture] |

The Grand Jury charges:

[18 U.S.C. § 1956(h)]

[ALL DEFENDANTS]

A.  INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

1.  Defendant SYLAS NYUYDZENE VERDZEKOV lived in Chino Hills, California.

2. Defendant MUSTAPHA NKACHIWOUO SELLY YAMIE, also known as ("aka") "Mustapha Selly Yamie," aka "Mustapha Sellyyamie," aka "Mustapha Yamieselly," lived in Inglewood, California.

3. Defendant LOVERT CHE lived in Lomita, California.

4. Victim Business 1 was a law firm based in Naples, Florida.

5. Victim Business 2 was a law firm based in Coral Springs, Florida.

6. One type of elder fraud scam was a fraudulent scheme in which an elderly victim was targeted by one or more imposters purporting to be representatives of internet companies or banks. Using false pretenses, representations, and promises, the imposter would deceive the victim into believing that the victim's bank account had been compromised and would trick the victim into sending money by interstate wire or check to the imposter, under false pretenses.

7. One type of "real estate" scam was a fraudulent scheme in which an imposter would pretend to act as a purported seller of real property. In fact, the purported seller was not the actual owner of the property and had no authority to sell it. Using false pretenses, representations, and promises, the imposter would deceive a victim into believing that they were entering into a legitimate sale of the property and would trick the victim into sending money by interstate wire or mailing a check to the imposter, under false pretenses.

8. Synthetic identities were false identities created using certain personally identifiable information, such as names, dates of birth, and social security numbers, that typically consisted of a combination of stolen and fictitious information. Synthetic

identities could be used to create false business names and entities (i.e., "shell companies").

B.   THE OBJECT OF THE CONSPIRACY

9.   Beginning on a date unknown, but no later than on or about November 30, 2021, and continuing to the present, in Los Angeles County, within the Central District of California, and elsewhere, defendants VERDZEKOV, YAMIE, and CHE (collectively, "defendants") conspired and agreed with one another and others known and unknown to the Grand Jury to knowingly and intentionally commit an offense against the United States, namely, money laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), by conducting and attempting to conduct financial transactions affecting interstate and foreign commerce with the intent to conceal and disguise the nature, location, source, ownership, and control of the proceeds of some form of specified unlawful activity, namely, mail fraud, in violation of Title 18, United States Code, Section 1341 and wire fraud, in violation of Title 18, United States Code, Section 1343.

C.   THE MANNER AND MEANS OF THE CONSPIRACY

10.   The object of the conspiracy was to be carried out, and was carried out, in substance, as follows:

   a.   Defendants and their co-conspirators would obtain or create fake identification documents, including passports and driver's licenses, using synthetic identities.

   b.   Defendants and their co-conspirators would use the fake identification documents to incorporate over 36 shell companies in the State of California.  These shell companies did not conduct legitimate business and were incorporated to further defendants' crimes.

   c. Defendants and their co-conspirators would also open at least 145 bank accounts and at least 32 private mailboxes under the names of synthetic identities or the shell companies.

   d. Defendants and their co-conspirators would then cause the proceeds of elder fraud scams, real estate scams, and other fraud schemes conducted by co-conspirators to be sent by the victims, by means including interstate wires and mailings, to private mailboxes and bank accounts that defendants controlled.

   e. Defendants would deposit the funds from victims into bank accounts they controlled and that they opened under synthetic identities and shell companies, knowing and intending that such deposits would conceal or disguise the nature, location, source, ownership, or control of the funds.

   f. Once the funds were received into those accounts, defendants would quickly transfer a substantial portion of those funds, including through wires to other accounts defendants controlled or mobile payments such as Zelle, and would make large cash withdrawals in order to use the stolen funds on expenses for their own personal benefit.

 11. In total, defendants laundered at least approximately $10 million in funds provided by at least approximately 100 victims of elder fraud scams, real estate scams, and other fraud schemes.

D. OVERT ACTS

 12. In furtherance of the conspiracy, and to accomplish its object, defendants VERDZEKOV, YAMIE, and CHE, together with others known and unknown to the Grand Jury, on or about the following dates, committed and willfully caused others to commit the following overt

acts, among others, within the Central District of California and elsewhere:

**Overt Acts Related to Victim R.P.**

<u>Overt Act No. 1</u>:   On November 30, 2021, defendant YAMIE caused to be created a shell company called Romehoun Sales using the synthetic identity of Jerome Calhoun.

<u>Overt Act No. 2</u>:   On January 5, 2022, defendant YAMIE caused to be opened a JP Morgan Chase bank account ending in -9166 in the name of Romehoun Sales ("Romehoun Sales Chase account").

<u>Overt Act No. 3</u>:   On September 12, 2022, defendant VERDZEKOV, defendant YAMIE, and their co-conspirators caused fraud victim R.P. to transfer approximately $43,000 into the Romehoun Sales Chase account.

<u>Overt Act No. 4</u>:   On September 12, 2022, defendant VERDZEKOV and defendant YAMIE exchanged a text message which discussed the funds stolen from victim R.P., which included images of a receipt from R.P.'s wire transfer and R.P.'s California driver's license.

<u>Overt Act No. 5</u>:   On September 13, 2022, defendant YAMIE withdrew approximately $3,000 from the Romehoun Sales Chase account, traceable at least in part to funds from fraud victim R.P.

**Overt Acts Related to Victims S.K. and L.K.**

<u>Overt Act No. 6</u>:   On August 23, 2022, defendants VERDZEKOV and YAMIE exchanged a text message which included details about the synthetic identity of George Obeng, specifically, a photograph of a fake driver's license and passport from the Republic of Malawi bearing the name and purported date of birth for George Obeng.

<u>Overt Act No. 7</u>:   On August 29, 2022, defendant VERDZEKOV and defendant YAMIE caused a Wells Fargo bank account ending in -9398 to

be opened under the synthetic identity of George Obeng ("Obeng Wells Fargo account"), using the information on the fake Republic of Malawi passport referred to in Overt Act No. 6.

Overt Act No. 8: On January 3, 2023, defendant VERDZEKOV and his co-conspirators caused victims S.K. and L.K. to mail a $90,000 cashier's check to a private mailbox located in Torrance, California.

Overt Act No. 9: On January 5, 2023, defendant VERDZEKOV deposited the $90,000 cashier's check from victims S.K. and L.K. into the Obeng Wells Fargo account.

Overt Act No. 10: On January 26, 2023, defendant VERDZEKOV sent defendant YAMIE a text message, stating in part "all my George obeng [sic] accounts closed."

**Overt Acts Related to Victim J.G.**

Overt Act No. 11: On February 18, 2023, defendant CHE caused a private mailbox located at 28364 South Western Avenue, Unit 457, Palos Verdes, CA (the "Palos Verdes Mailbox") to be opened under the synthetic identity of Roger Coffman.

Overt Act No. 12: On February 22, 2023, defendant CHE and his co-conspirators caused victim J.G. to mail a $63,750 cashier's check to the Palos Verdes Mailbox.

Overt Act No. 13: On March 1, 2023, defendant YAMIE caused a private mailbox located at 21213 Hawthorne Boulevard, Suite 5090, Torrance, CA (the "Torrance Mailbox") to be opened under the synthetic identity of George Campbell.

Overt Act No. 14: On March 3, 2023, defendant YAMIE and his co-conspirators caused victim J.G. to mail a $249,900 cashier's check to the Torrance Mailbox.

Overt Act No. 15: On March 4, 2023, defendant VERDZEKOV sent

defendant YAMIE a text message with a photograph of the $249,900 cashier's check referenced in Overt Act No. 14.

Overt Act No. 16:  On March 4, 2023, after defendant VERDZEKOV sent the photograph of J.G.'s $249,900 cashier's check referenced in Overt Act No. 15, defendant VERDZEKOV sent defendant YAMIE additional text messages stating, "We need more mailboxes," and "Cuz checks better than wires."

Overt Act No. 17:  On March 4, 2023, defendant YAMIE sent defendant VERDZEKOV text messages stating, "Far better" and "I'll get more."

Overt Act No. 18:  On March 6, 2023, co-conspirators caused a $5,200 cashier's check, traceable at least in part to funds from fraud victim J.G., to be made out to Roger Coffman, a synthetic identity used by defendant CHE.

Overt Act No. 19:  On March 7, 2023, defendant YAMIE and his co-conspirators caused victim J.G. to mail a $249,960 cashier's check to the Torrance Mailbox.

Overt Act No. 20:  On or about March 8, 2023, defendant VERDZEKOV sent defendant YAMIE a text message with a photograph of victim J.G.'s $249,960 cashier's check.

**Overt Acts Related to Victim A.B.**

Overt Act No. 21:  On June 30, 2023, defendant YAMIE and his co-conspirators caused victim A.B. to send signed, blank checks associated with A.B.'s personal bank account to the synthetic identity of Kevin Booker at a private mailbox located at 2768 Sepulveda Boulevard, Unit 18, Torrance, CA (the "Sepulveda Mailbox").

Overt Act No. 22:  On July 10, 2023, defendant YAMIE deposited a forged check for approximately $55,330 drawn on the account

7

belonging to fraud victim A.B. into a Wells Fargo bank account ending in -7759 in the name of shell company Fuasami Container Sales LLC.

Overt Act No. 23:  On approximately July 13, 2023, defendant YAMIE withdrew approximately $8,000, traceable at least in part to fraud proceeds from victim A.B., from a Wells Fargo bank account ending in -7759 in the name of shell company Fuasami Container Sales LLC.

**Overt Acts Related to Victim Business 1**

Overt Act No. 24:  On March 20, 2023, defendant VERDZEKOV and his co-conspirators caused Victim Business 1 to mail a $124,021 check to an address in Tarzana, California.

Overt Act No. 25:  On April 18, 2023, defendant VERDZEKOV deposited the $124,021 check from Victim Business 1 to a Wells Fargo bank account ending in –7668 in the name of victim W.K.

**Overt Acts Related to Victim Business 2**

Overt Act No. 26:  On August 12, 2022, co-conspirators caused to be opened a Wells Fargo bank account ending in -1121 in the name of shell company Whiskey Distributors ("Whiskey Distributors Wells Fargo account"), using the synthetic identity of Kevin Brown.

Overt Act No. 27:  On December 19, 2022, defendant VERDZEKOV and his co-conspirators caused Victim Business 2 to wire $63,962 to the Whiskey Distributors Wells Fargo account.

Overt Act No. 28:  On December 19, 2022, defendant VERDZEKOV withdrew approximately $2,000 from the Whiskey Distributors Wells Fargo account traceable at least in part to fraud proceeds from Victim Business 2.

FORFEITURE ALLEGATION

[18 U.S.C. § 982]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1), in the event of any defendant's conviction of the offense set forth in the sole Count of this Indictment.

2. Any defendant, if so convicted, shall forfeit to the United States of America the following:

　　(a) Any property, real or personal, involved in such offense, and any property traceable to such property; and

　　(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 18, United States Code, Section 982(b)(2), the defendant, if so convicted, shall forfeit substitute property, if, by any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty. Substitution of assets shall not be ordered, however, where the convicted defendant acted merely as an intermediary who handled but did not retain the property in the

course of the money laundering offense unless the defendant, in committing the offense or offenses giving rise to the forfeiture, conducted three or more separate transactions involving a total of $100,000.00 or more in any twelve-month period.

                                             A TRUE BILL

/S/
Foreperson

JOSEPH T. MCNALLY
Acting United States Attorney

*Lindsey Greer Dotson*

LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division

KRISTEN A. WILLIAMS
Assistant United States Attorney
Chief, Major Frauds Section

SCOTT PAETTY
Assistant United States Attorney
Deputy Chief, Major Frauds Section

SARAH S. LEE
GREGG E. MARMARO
Assistant United States Attorneys
Major Frauds Section